IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Criminal No. 05-322 |
| | ) | <u>See</u> Civil Action No. 09-1248 |
| JOHN JAY WOLFE, JR., | ) | |
| | ) | |
| Defendant/petitioner. | ) | |

## MEMORANDUM OPINION

BLOCH, District J.

Petitioner, on September 15, 2009, filed a <u>pro</u> <u>se</u> Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. No. 124) and memorandum in support thereof (Doc. No. 125). Upon consideration of this motion, and upon further consideration of the Government's response thereto (Doc. No. 132), filed on October 19, 2009, and Petitioner's "Motion in Reply to Government's Answer to 28 U.S.C. § 2255 Petition" (Doc. No. 142), filed on December 14, 2009, the Court denies Petitioner's motion for the reasons set forth below.[1]

---

[1]    The Court notes that on February 11, 2010, Petitioner filed a <u>pro</u> <u>se</u> Notice of Appeal (Doc. No. 147) from this Court's January 28, 2010 Order denying his "Motion for Release of Prejudgment Bail or Bond." (Doc. Nos. 144, 146). The filing of a notice of appeal typically divests a district court of its jurisdiction over a case. <u>See</u> <u>Griggs v. Provident Consumer Discount Co.</u>, 459 U.S. 56, 58-59 (1982). However, an exception to this principle is that a district court may proceed if the appeal is patently frivolous. <u>See</u> <u>United States v. Leppo</u>, 634 F.2d 101, 105 (3d Cir. 1980); <u>United States v.</u>
(continued...)

I.       **Background**

On October 12, 2005, an indictment was returned by the Grand Jury charging Petitioner and co-defendant Virgil Lewis Wolfe, who is Petitioner's brother, with retaliating against a witness or informant, in violation of 18 U.S.C. § 1513(b)(2). (Doc. No. 17). In sum, Petitioner and his brother were alleged to have knowingly caused bodily injury to Ronald Knox on August 28, 2005, in retaliation for Knox's cooperation with law enforcement in a criminal drug case pending in federal court in which the brothers' sister, Mae Wolfe, was a defendant. Petitioner and his brother were tried together, with the trial commencing on April 11, 2006, in the United States District Court for the Western District of Pennsylvania. On April 12, 2006, the jury returned a guilty verdict as to each defendant,[2] and the Court ordered presentence investigation reports ("PIR") to be prepared for each defendant. (Doc. Nos. 77, 78).

---

[1](...continued)
McIntyre, 2006 WL 1330202, at *1 (W.D. Pa. May 15, 2006); United States v. Wilson, 368 F. Supp. 2d 366, 367 (M.D. Pa. 2005). The motion on appeal sought release pending resolution of the present motion. However, even if Petitioner had raised meritorious arguments in the present motion, which he did not, at best he would have been entitled to a new trial, not to acquittal, so there would have been no basis to release Petitioner. In any event, the Court's denial of the present motion eliminates the basis on which Petitioner sought release. Accordingly, the Court retains jurisdiction to adjudicate this motion.

[2]      Both at the close of the Government's case and after the jury verdict, Petitioner moved for acquittal, and both times the Court denied said motion.

The Probation Officer, in the PIR, concluded that Petitioner was a career offender under Section 4B1.1 of the United States Sentencing Guidelines, subject to a sentencing range of 100 to 120 months. After objections were filed by the parties, the Court, on July 27, 2006, issued its Tentative Findings and Rulings Concerning Disputed Facts or Factors, confirming this guideline range and denying Petitioner's request for a downward departure and/or variance. (Doc. No. 99). On August 3, 2006, the Court sentenced Petitioner to 100 months' imprisonment, to be followed by three years' supervised release. (Doc. Nos. 100, 101).[3]

Petitioner subsequently appealed and challenged his conviction and sentence, raising several arguments before the Third Circuit Court of Appeals: (1) that there was insufficient evidence that, when Petitioner assaulted the victim in this case, Ronald Knox, he intended to retaliate against Knox for cooperating against Mae Wolfe; (2) that his Pennsylvania simple assault conviction cannot serve as a basis for classifying him as a career offender for sentencing purposes; and (3) that this Court erred in refusing his request for a downward departure and/or variance. On December 9, 2008, the Third Circuit affirmed Petitioner's conviction and sentence. Petitioner filed a petition for certiorari with the United States Supreme Court which was denied on March 9, 2009.

---

[3]    Virgil Wolfe received the same sentence on July 6, 2006. (Doc. Nos. 92, 93).

On September 15, 2009, Petitioner, acting pro se, filed the present motion pursuant to 28 U.S.C. § 2255.  The Court will address the claims raised in this motion below.[4]

## II.      Discussion

Pro se pleadings are held to less stringent standards than formal pleadings drafted by lawyers.  See Haines v. Kerner, 404 U.S. 519, 520 (1972); Holley v. Department of Veterans Affairs, 165 F.3d 244, 247 (3d Cir. 1999).  However, even a pro se plaintiff must be able to prove a "set of facts in support of his claim which would entitle him to relief."  Haines, 404 U.S. at 520-21 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

Petitioner brings his pro se motion pursuant to 28 U.S.C. § 2255.  This statute permits a "prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States...[to] move the

---

[4]      On September 16, 2009, in accordance with United States v. Miller, 197 F.3d 644 (3d Cir. 1999), the Court issued an Order advising Petitioner that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prohibits consideration of a second or successive habeas petition absent certification from the Third Circuit that certain very specific and rare circumstances exist. With that in mind, Petitioner was ordered to advise the Court as to how he wished to proceed in this case, specifically, whether he wished to have his motion ruled upon as filed and lose the ability to file successive petitions absent Third Circuit certification, or whether he wished to withdraw the motion and file one all-inclusive Section 2255 petition within the one-year statutory period of the AEDPA.  On September 29, 2009, Petitioner informed the Court that he wished to proceed on his motion as filed.  (Doc. No. 127).

court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). An evidentiary hearing is not required on a Section 2255 motion if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

Petitioner raises two grounds upon which he claims he is entitled to relief under Section 2255. The first ground is that his rights under the Confrontation Clause of the Sixth Amendment were violated. The second is that the prosecutor's misconduct violated the Due Process Clause of the Fifth Amendment. However, as to each of these claims, Petitioner also raises a related claim that his counsel was constitutionally ineffective. Petitioner essentially therefore raises both a substantive issue and an ineffective assistance of counsel issue as to each alleged ground for relief.

The distinction is significant because Petitioner's substantive claims are procedurally defaulted, since these issues could certainly have been raised on direct appeal. "Section 2255 petitions are not substitutes for direct appeals and serve only to protect a defendant from a violation of the constitution or from a statutory defect so fundamental that a complete miscarriage of justice has occurred." United States v. Cepero, 224 F.3d 256, 267 (3d Cir. 2000) (citing Reed v. Farley, 512 U.S. 339, 348 (1994)). See also Young v. United States, 124 F.3d 794, 796 (7th Cir. 1997); United States v. Essig, 10 F.3d 968, 979 (3d Cir. 1993) ("[Section]

5

2255 is no longer a necessary stand-in for the direct appeal of a sentencing error because full review of sentencing errors is now available on direct appeal."). Arguments that could have been made on direct appeal cannot be raised in a Section 2255 motion unless the petitioner can demonstrate both cause and prejudice. See Bousley v. United States, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'") (citations omitted); Essig, 10 F.3d at 979 (holding that the cause and prejudice standard of United States v. Frady, 456 U.S. 152, 167-68 (1982), "applies to § 2255 proceedings in which a petitioner seeks relief from alleged errors in connection with his sentence that he has not directly appealed").

Petitioner did not raise the issue of whether his conviction was obtained in violation of the Confrontation Clause or the issue of prosecutorial misconduct on appeal. Moreover, he has offered no objective evidence as to why he did not raise these claims on appeal. Therefore, such claims, standing alone, would properly be dismissed. See Marone v. United States, 10 F.3d 65, 67 (2d Cir. 1993); Essig, 10 F.3d at 979 ("In procedural default cases, the cause standard requires the petitioner to show that 'some objective factor external to the defense impeded counsel's efforts'

6

to raise the claim.") (quoting McCleskey v. Zant, 499 U.S. 467, 493 (1991)).

However, as explained, Petitioner also raises an ineffective assistance of counsel claim in connection with each of these allegations. These claims were properly brought since an exception to the procedural default rule is that a defendant need not demonstrate cause and prejudice when he raises a claim of ineffective assistance of counsel. See United States v. DeRewal, 10 F.3d 100, 104 (3d Cir. 1993). Indeed, a Section 2255 motion is the proper and preferred vehicle for alleging ineffective assistance of counsel. See United States v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994). Accordingly, although the substantive claims properly are procedurally defaulted, Petitioner's related ineffective assistance of counsel claims are not.

A defendant seeking relief under Section 2255 on the grounds of ineffective assistance of counsel "must show both that: (1) counsel's representation fell below an objective standard of 'reasonableness under prevailing professional norms;' and (2) the defendant suffered prejudice as a result - that is, there is a reasonable probability that, but for the counsel's deficient performance, the result of the proceeding would have been different." Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996) (citing Strickland v. Washington, 466 U.S. 668, 694 (1984)). "A

reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694.

> In reviewing counsel's performance, [a court] must be highly deferential. [A court] must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. Moreover, [a court] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

<u>Sistrunk</u>, 96 F.3d at 670 (citing <u>Strickland</u>, 466 U.S. at 689-90) (internal quotation marks and citations omitted). "It is only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." <u>United States v. Kauffman</u>, 109 F.3d 186, 190 (3d Cir. 1997) (quoting <u>United States v. Gray</u>, 878 F.2d 702, 711 (3d Cir. 1989)).

Accordingly, since the focus of Petitioner's valid claims is the conduct of his counsel, he must demonstrate both ineffective assistance and prejudice under <u>Strickland</u>. Arguably, this is a different showing than he would have to make if his substantive claims themselves were not procedurally defaulted. However, in the end, it makes no difference, because resolution of the merits of his substantive claims is necessary to resolve Petitioner's remaining,

valid claims.[5]  For the reasons that follow, the Court finds no merit in either of Petitioner's claims and finds that the record conclusively shows that he is not entitled to relief under Section 2255 on any of the grounds he alleges.[6]

### A.  Confrontation Clause

As noted, Petitioner's first claim is that his conviction was obtained in violation of his rights under the Sixth Amendment's Confrontation Clause.  He argues that the admission of his brother Virgil Wolfe's threatening statements toward the Government's chief witness, Ronald Knox, at their joint trial violated the Sixth Amendment because he was denied the right to cross-examine his brother.  He claims that his brother's statements constituted testimonial hearsay statements and that, because his brother was unavailable to testify, he was denied his right to confront this witness.  He further argues that his counsel was ineffective in failing to object to this testimony.  The Court disagrees and finds no merit in Petitioner's claim.

The statements of Virgil Wolfe in question were introduced through the testimony of Ronald Knox.  As noted, Petitioner and his brother Virgil were alleged to have assaulted Knox on August 28,

---

[5]     In essence, the Court is ruling on the merits of Petitioner's Confrontation Clause claim and his prosecutorial misconduct claim because such a ruling disposes of his ineffective assistance of counsel claims.

[6]     Since the record itself conclusively shows that Petitioner is not entitled to relief, no evidentiary hearing is necessary.

2005, in retaliation for his cooperation with law enforcement in connection with a criminal federal drug case against their sister Mae. On direct examination at the brothers' joint trial, in the course of testifying as to the assault, Knox testified that "Virgil said to me that I was telling on his sister, that I was making - ah, that I was testifying against her." (Transcript of Trial Proceedings Commencing on Tuesday, April 11, 2006 ("4-11-06 Trial Tr.") at 50). He further testified that, after he tried to explain the situation, Virgil stated that "he just didn't want to hear it." (Id.). Upon further questioning, Knox testified that "[Virgil] was just saying that, that I was - that I better not testify against his sister; that, that I - if I was using, you know, yuns did what yuns did. Everybody's got to pay for it." (Id.). Knox then testified that Vigil Wolfe said that "Myron told him that I wrote statements. Myron, which was Mae's lawyer, told him that I wrote statements. I was giving up tapes or selling the tapes on her." (Id. at 50-51).

Petitioner alleges that the statements of his brother contained in this testimony constitute testimonial statements excludable under the Sixth Amendment pursuant to Crawford v. Washington, 541 U.S. 36 (2004), Bruton v. United States, 391 U.S. 123 (1968), and Monachelli v. Warden, SCI-Graterford, 884 F.2d 749 (3d Cir. 1989). The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." In

10

Crawford, the United States Supreme Court held that this clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." 541 U.S. at 53-54. "The lynchpin of the Crawford decision thus is its distinction between testimonial and nontestimonial hearsay; simply put, the rule announced in Crawford applies only to the former category of statements." United States v. Hendricks, 395 F.3d 173, 179 (3d Cir. 2005). "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." Davis v. Washington, 547 U.S. 813, 821 (2006).

The Supreme Court, in Crawford, did not purport to provide a complete definition as to what constitutes testimonial statements. See Davis, 547 U.S. at 821. However, both the Supreme Court and the Third Circuit have subsequently provided some guidance as to what constitutes testimonial statements. In Davis, the Supreme Court emphasized that statements made in the course of police interrogation are testimonial when their primary purpose is not to enable police assistance to meet an ongoing emergency, but rather, to establish or prove past events potentially relevant to later criminal prosecution. See id. at 822. The court therefore drew a distinction between "speaking about events *as they were actually*

11

*happening*, rather than 'describing past events.'" Id. at 827 (emphasis in original) (quoting Lilly v. Virginia, 527 U.S. 116, 137 (1999)).

In United States v. Hinton, 423 F.3d 355 (3d Cir. 2005), the Third Circuit further discussed the term testimonial. There, the court identified three formulations of the core class of testimonial statements:

> (1) ex parte in-court testimony or its functional equivalent – that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially;
>
> (2) extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; and
>
> (3) statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

Id. at 359 (internal quotations and citations omitted). The court held that the third formulation was the broadest and would ensure compliance with the Confrontation Clause. See id. Based on this case law, it would appear that, to be testimonial, a statement generally must describe past, rather than present events, and must be made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

12

The statements at issue here do not come close to meeting these criteria. The statements were made by Petitioner's co-defendant brother to the victim in this case. The statements did not describe past events as much as explain the present purpose of the confrontation. Virgil Wolfe could not have possibly believed that his statements would be available at a later trial against him and his brother. He may have feared that the statements could be used against him, but clearly did not make the statements in anticipation of use at trial. Virgil Wolfe was in no way acting as a witness in making the remarks to Knox to which Knox testified. See Davis, 547 U.S. at 828.

In any event, even if Virgil Wolfe's statements were testimonial, they would not be implicated by Crawford or Davis because they did not constitute hearsay. The Confrontation Clause does not bar the use of even testimonial statements for purposes other than establishing the truth of the matter asserted. See Crawford, 541 U.S. at 59 n.9; Hendricks, 395 F.3d at 183. Because Virgil Wolfe's statements were not offered for the truth of the matter asserted, they do not implicate the Sixth Amendment.

As noted, the statements at issue relate primarily to the present purpose of the confrontation. While allusions are made to past events, e.g., that Knox had cooperated with the Government against Mae Wolfe, the statements were not offered to prove the truth of those past events. Indeed, evidence of Knox's cooperation

13

with the Government was brought in through Knox's own direct testimony. (4-11-06 Trial Tr. at 42-44). Virgil Wolfe's statements were, instead, admitted to prove that he had made statements regarding the purpose of his assault on Knox.   As such, Knox's testimony was not offered to prove anything more than the fact that Virgil Wolfe made certain remarks to him prior to the assault.

It is well-established that, if the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of the matter asserted, and the statement is not hearsay.  See United States v. Saada, 212 F.3d 210, 218 n.8 (3d Cir. 2000); United States v. Tinsley, 172 Fed. Appx. 431, 441 (3d Cir. 2006); FRE 801, Advis. Comm. Note to Subsection (c).   As the Supreme Court explained in Dutton v. Evans, 400 U.S. 74 (1970):

> Neither a hearsay nor a confrontation question would arise had [defendant's] testimony been used to prove merely that the statement had been made.   The hearsay rule does not prevent a witness from testifying as to what he has heard; it is rather a restriction on the proof of fact through extrajudicial statements.   From the viewpoint of the Confrontation Clause, a witness under oath, subject to cross-examination, and whose demeanor can be observed by the trier of fact, is a reliable informant not only as to what he has seen but also as to what he has heard.

Id. at 88.  Here, Knox testified simply as to what he heard Virgil Wolfe say.   Knox's testimony was not offered to prove the truthfulness of any of Wolfe's comments, but simply to prove that

14

the comments were made.  As such, they do not constitute hearsay and do not implicate the Confrontation Clause.[7]

Petitioner's arguments regarding <u>Bruton</u> fail for the same reasons.  The Supreme Court, in <u>Bruton</u>, articulated a limited rule that a defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating confession of a non-testifying co-defendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the co-defendant.  However, in <u>Richardson v. Marsh</u>, 481 U.S. 200 (1987), the Supreme Court further clarified its holding in <u>Bruton</u> by distinguishing between statements that expressly implicate a co-defendant and those that are not incriminating on their face and that become so only when linked with evidence introduced later at trial.  The former, as the Court had held in <u>Bruton</u>, implicate the Confrontation Clause while the latter do not.  <u>See id.</u> at 208-11. Moreover, an admission that does not implicate, or that makes no reference at all to, any other co-defendant is not governed by

---

[7]    Even if Virgil Wolfe's statements could be construed as having been admitted to prove the truth of the matter asserted, they would be admissible under Federal Rule of Evidence 803(3)because they would constitute evidence of Wolfe's existing state of mind.  <u>See United States v. Lea</u>, 131 Fed. Appx. 320 (2d Cir. 2005).  In such case, the statements would be admissible as non-testimonial hearsay because they would fall under a firmly rooted hearsay exception. <u>See Ohio v. Roberts</u>, 448 U.S. 56, 66 (1980); <u>Hendrick</u>, 395 F.3d at 179 ("[U]nless a particular hearsay statement qualifies as 'testimonial,' <u>Crawford</u> is inapplicable and <u>Roberts</u> still controls.").

Bruton.   See United States v. Belle, 593 F.2d 487, 494 (3d Cir. 1979).

The statements the admission of which Petitioner argues violated his Confrontation Clause rights do not meet this standard. It should be noted that the statements made by Virgil Wolfe are not the type of confession or admission typically at issue in a Bruton situation.   In any event, the statements make no mention of Petitioner and certainly do not directly implicate him in any way.[8] See Smith v. Sirmons, 200 Fed. Appx. 822 (10th Cir. 2006) (admission of evidence of threats made by defendant's brother in trial of defendant did not violate Confrontation Clause because the evidence implicated the brother rather than the defendant).   Petitioner's reliance on Monachelli v. Warden, SCI Graterford, 884 F.2d 749 (3d Cir. 1989), is therefore misplaced, as that case dealt with the admissibility of a co-defendant's statements directly implicating his co-defendant brother of first degree murder.

Regardless, much like the rule enunciated in Crawford, the standard set forth in Bruton does not apply in regard to non-hearsay statements.   See Tennessee v. Street, 471 U.S. 409, 413-14 (1985). It is sufficient that the defendant be able to cross-examine the witness recounting the non-hearsay statements.   See id. at 414.   As

[8]     In fact, to the extent that the statements implicated Petitioner in any way, the Court instructed the jury that they could consider Virgil Wolfe's statements only as to his guilt, and not as to Petitioner's.

discussed, the statements at issue do not constitute hearsay,[9] and Petitioner had the opportunity, and indeed did, cross-examine Knox.[10]

In sum, the statements at issue are not the type that implicate Petitioner's Sixth Amendment Confrontation Clause rights. They were admissible non-hearsay statements, and Petitioner's counsel would have had no reason to object to the admissibility of the statements. Counsel's performance, therefore, did not fall below an objective standard of reasonableness. Regardless, had he raised such an objection, the Court would have overruled it for the reasons set forth herein. Accordingly, Petitioner's counsel was not constitutionally ineffective in failing to challenge these statements.

## B. **Prosecutorial Misconduct**

The second ground upon which Petitioner seeks relief is prosecutorial misconduct, specifically, that the Government attorney, in his closing argument, misstated the Court's final jury instructions and shifted the burden of proof to Petitioner. As

---

[9]     Again, even if Virgil Wolfe's statements were considered to be hearsay statements, they would fall under a firmly rooted hearsay exception, because they would constitute evidence of Wolfe's existing state of mind pursuant to FRE 803(3), and would therefore be admissible under Bruton and its progeny. See United States v. Mussare, 405 F.3d 161, 168 (3d Cir. 2005).

[10]     Assuming that Bruton has not been modified by Crawford, it is arguably not relevant as to whether the statements are testimonial or not, as Bruton can apply to both testimonial and non-testimonial statements. See Mussare, 405 F.3d at 168; United States v. Berrios, 2008 WL 2704884, at *8 (D. V.I. July 8, 2008).

stated above, Petitioner also alleges that his counsel was ineffective in not objecting to the Government attorney's comments. Petitioner's claims have no merit.

First, as with Petitioner's first alleged ground for relief, he makes both a substantive claim of prosecutorial misconduct and a claim of ineffective assistance of counsel in connection with this claim. As discussed in regard to Petitioner's first ground, there was no reason that Petitioner could not have raised the issue of prosecutorial misconduct on direct appeal, and he fails to show that some objective factor external to the defense impeded his efforts to raise these claims. See Essig, 10 F.3d at 979. Accordingly, the substantive claims are procedurally defaulted. However, as with Petitioner's other claim, Petitioner's related ineffective assistance of counsel claims are not procedurally defaulted, and resolution of the merits of his substantive claim is necessary to resolve Petitioner's remaining, valid claim.

Under Section 2255, relief for prosecutorial misconduct is appropriate when the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). See also United States v. Morena, 547 F.3d 191, 194 (3d Cir. 2008). Part of this analysis is determining whether a prosecutor's closing argument

18

denied the defendant of due process.  A prosecutor may not comment on a defendant's failure to testify and may not improperly suggest that the defendant has a burden to produce evidence.  See United States v. Balter, 91 F.3d 427, 441 (3d Cir. 1996).  However, "there is nothing improper about a prosecutor 'attempt[ing] to focus the jury's attention on holes in the defense's theory.'" United States v. Lore, 430 F.3d 190, 213 (3d Cir. 2005) (quoting Balter, 91 F.3d at 441).

        Petitioner's claims do not approach the level required to establish a denial of due process.  Government counsel, in discussing "the silence of John Wolfe," is clearly referring to the inference that may be drawn from Petitioner's silence during the confrontation with Knox, not to Petitioner's decision not to testify at trial.  Government counsel was suggesting that even though Virgil Wolfe was the one doing the talking during the assault on Knox, the jury could infer that Petitioner was there for the same reason as was Virgil, even though Petitioner was not saying anything. (Transcript of Trial Proceedings Commencing on Tuesday, April 12, 2006 at 100-01).  This constitutes nothing more than an attempt to show holes in Petitioner's defense that he acted without the requisite intent.   It calls for nothing more than a logical inference and in no way implies that Petitioner had the burden to present evidence as to the reason for his silence during the assault on Knox.

Moreover, Government counsel's statements were consistent with the Court's instruction that the jury was to consider Virgil Wolfe's statements only in the case against him and not the case against Petitioner. The Government did not suggest that Virgil Wolfe's statements could be imputed to Petitioner; it merely argued that, given Virgil Wolfe's stated reasons for the assault, Petitioner's intent could be inferred from participating in the assault in concert with his brother without stating any other reason.

Accordingly, the Government's closing argument did not constitute prosecutorial misconduct. As such, Petitioner's counsel would have had no reason to object to the argument, and his performance was not deficient. Regardless, had he raised such an objection, the Court would have overruled it for the reasons set forth herein. Accordingly, Petitioner's counsel was not constitutionally ineffective in failing to challenge this argument.

**III.    Conclusion**

For all of the above-stated reasons, Petitioner's motion is denied in its entirety. Further, this Court will not issue a certificate of appealability in this case. A certificate of appealability may issue under 28 U.S.C. § 2255 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. 2253(c)(2). For the reasons set forth above, Petitioner has not made a substantial showing of the

denial of a constitutional right and a certificate of appealability should not issue in this action.

An appropriate Order will be issued.

s/Alan N. Bloch
United States District Judge

Dated:    April 5, 2010

ecf:      Counsel of record

cc:       John Jay Wolfe, Jr.
          #08694-068
          FCI Gilmer
          P.O. Box 6000
          Glenville, WV 26351